Filed 11/29/22  P. v. Meredith CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALBERT MEREDITH,<br><br>    Defendant and Appellant. | A163555<br><br>(Sonoma County Super. Ct.<br> No. SCR730635) |

Effective January 1, 2022, Senate Bill No. 567 (2021–2022 Reg. Sess.) (S.B. 567) and Assembly Bill No. 124 (2021–2022 Reg. Sess.) (A.B. 124) amended the determinate sentencing law, Penal Code section 1170, in several fundamental ways.  (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1038 (*Flores*).)  An upper term is now permitted only in certain circumstances, and a lower term is the presumptive term in other circumstances.  (§ 1170, subd. (b)(2), (3), and (6).)

Defendant Albert Meredith's only contention on appeal is that he is entitled to resentencing under Penal Code section 1170 as amended by S.B. 567 and A.B. 124, and his case should be remanded for that purpose.  The Attorney General agrees the amended sentencing law applies retroactively but argues remand is unnecessary under the circumstances of this case.

We will remand for resentencing under the amended law.

1

# BACKGROUND

In May 2020, the district attorney filed an 11-count information against defendant. He was charged with three counts of corporal injury to a child, Jane Doe 1 (Pen. Code,[1] § 273d, subd (a)) and one count of child abuse upon Doe 1 (§ 273a, subd. (a)); all offenses were alleged to have occurred "[o]n or about June 1, 2019 – August 1, 2019." As to two of the counts, it was alleged that defendant personally inflicted great bodily injury on a child under five years old (§ 12022.7, subd. (d)). Defendant was charged with six counts of lewd or lascivious act upon Jane Doe 2, a child under 14 years old (§ 288, subd. (a)), and one count of lewd or lascivious act upon Doe 2 by use of force, duress, or threat (§ 288, subd. (b)(1)); all offenses against Doe 2 were alleged to have occurred "[o]n or about January 1, 2019 – August 1, 2019."

In May 2021, the parties reached a plea agreement. Defendant pleaded no contest to two counts of corporal injury to Doe 1 (§ 273d, subd. (a); counts 1 and 2) and one count of forcible lewd or lascivious act upon Doe 2 (§ 288, subd. (b)(1); count 11). He also admitted the two enhancement allegations of great bodily injury related to counts 1 and 2. Thus, defendant admitted that he inflicted "cruel and inhuman corporal punishment and injury resulting in a traumatic condition, to wit: fractured ribs," as alleged in count 1 of the information, and that he inflicted great bodily injury, "to wit: a broken leg," as alleged in the enhancement for count 2. The parties agreed to a sentence of no more than 14 years, eight months and no less than 10 years and that the remaining charges would be dismissed with a *Harvey* waiver.[2]

---

[1] Further undesignated statutory references are to the Penal Code.

[2] "A *Harvey* waiver permits a trial court to consider facts underlying dismissed counts in determining the appropriate disposition for the offense of

2

Defense counsel stipulated that the preliminary hearing transcript provided a factual basis for the plea. Sonoma County Sheriff's Detective Michael Sealock, who investigated the criminal matter, and Child Protective Services supervisor Dara Chanin, who investigated the juvenile dependency matters related to Doe 1 and Doe 2, testified at the preliminary hearing.

Sealock testified that Doe 1 was defendant's daughter; she was born in May 2019 and was three months old when Sealock began the investigation. Doe 2 was Doe 1's four-year-old half-sister. Doe 1 and Doe 2 lived with their mother, the mother's family (the victims' grandmother and uncle), and defendant, who was the mother's boyfriend at the time.

Sealock learned from medical records and from talking with an examining doctor that Doe 1 had 11 rib fractures and a right tibia fracture.[3] He interviewed the victims' mother, who told him about a time at the end of July 2019 when she asked defendant to change Doe 1's diaper and the baby let out a blood-curdling cry. She saw defendant squeezing Doe 1, and she took the baby from him. The mother also told Sealock that defendant bit Doe 1 twice, once on the cheek and once on the arm. She said she confronted defendant about the bites and he admitted to it. The uncle, who was developmentally delayed, said that every time defendant held Doe 1, she cried and that defendant would tickle Doe 2 and he was a little rough. The grandmother described defendant holding Doe 1 tightly and shoving a bottle in her mouth when he tried to feed her; she indicated defendant was not to be trusted with the baby.

which the defendant was convicted." (*People v. Moser* (1996) 50 Cal.App.4th 130, 132–133; see *People v. Harvey* (1979) 25 Cal.3d 754.)

[3] According to Sealock, the doctor opined that the rib fractures would have been caused by squeezing and not from falls.

Sealock also observed interviews of Doe 2 conducted by a forensic interviewer. He testified that Doe 2 disclosed that defendant hurt her and her baby sister. She demonstrated that defendant would hurt her by putting her hands on her own throat[4]; she said defendant touched her "no-no spot," which she identified on a drawing of little girl as the area where the vagina was. Doe 2 also said defendant hurt her by putting medicine all over her body, which made her feel bad.

Chanin interviewed defendant August 30, 2019, for a report to the juvenile court. Chanin testified that she asked defendant how Doe 1 got all the fractures, and he responded that he thought it was from him squeezing her too tight. Defendant said he squeezed the baby's torso on many occasions ("a lot"), and he did it because he was "angry and sad." Defendant also told Chanin he bit Doe 1 twice. Chanin asked defendant what he thought Doe 2 said to CPS, and defendant responded that he molested her. Chanin testified that defendant admitted that he touched Doe 2's clitoris; he said this happened six times. He admitted that he had his hand on Doe 2's neck at least a couple of those times. Defendant said he told Doe 2 that if she told anyone, he would go to jail.

At the sentencing hearing on August 27, 2021, the trial court sentenced defendant to 14 years, eight months in state prison. The sentence was composed of an upper term of 10 years for count 11; 16 months (one-third the middle term of four years) consecutive for count 1, plus two years (one-third the upper term of six years) for the great bodily injury enhancement; and 16 months (one-third the middle term) consecutive for count 2. The court struck the punishment for the great bodily injury enhancement as to count 2.

---

[4] Sealock understood from his observation of the interviews that Doe 2 was indicating that defendant choked her but she did not use those words.

4

The trial court explained it imposed the upper terms based on the circumstances (1) defendant took advantage of a position of trust "with regard to this familial relationship with each of the two juvenile victims," (2) defendant "clearly engaged in violent conduct in the past which indicates a danger to the community," and (3) "most notably, the vulnerability of each of the two victims, Jane Doe 1 and Jane Doe 2, which in and of itself is a factor warranting the aggravated term if the Court were so inclined to impose it."

The court noted the ages of the victims when the offenses occurred and emphasized "the unbelievable vulnerability of Jane Doe No. 1." The court said, "In my years of doing this work, I don't know that I [have] ever seen a victim so young. The age of 10 weeks [referring to Jane Doe 1] suffering those kinds of injuries. It truly defies understanding." The court described defendant as "an enigma," as he had been "nothing but respectful" in court and was "forthcoming with the probation department and the Department of Child Protective Services about the case," but "the facts and circumstances" of the case were "truly monstrous." Addressing defendant, the court explained it was imposing the maximum sentence available under the plea agreement and stated, "I think you earned every day of it. But I do think it's in the interest of justice, and I do think that it provides you with the opportunity to somehow figure out what went wrong and try to contribute to the community again. . . ."

## DISCUSSION

A.    *Changes to Section 1170*

At the time defendant was sentenced, section 1170 gave the trial court broad authority to select from the applicable triads of statutory punishments for the principal term and enhancements that "in the court's discretion, best

serve[d] the interests of justice." (Former § 1170, subd. (b), as amended by Stats. 2020, ch. 29, § 15 ["When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court"].)

Now, however, section 1170, subdivision (b)(2), provides, "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and *the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.*" (§ 1170, subd. (b)(2), italics added (§ 1170(b)(2)).)[5]

And section 1170, subdivision (b)(6), now provides that "the court shall order imposition of the lower term" if the defendant is a "youth" and that fact "was a contributing factor in the commission of the offense" "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6).) A "youth" for purposes of the statute is "any person under 26 years of age on the date the offense was committed." (§§ 1016.7, subd. (b); 1170, subd. (b)(6)(B) (§ 1170(b)(6)(B)).)

The parties agree that section 1170 as amended applies retroactively to defendant's case. (See *Flores, supra,* 73 Cal.App.5th at p. 1039 [S.B. 567's amendments to section 1170 are "an ameliorative change in the law applicable to all nonfinal convictions on appeal"].) The usual remedy in this

---

[5] There is an exception to the requirement that facts must be stipulated or found beyond a reasonable doubt after a trial, but it is not relevant in this case. (§ 1170, subd. (b)(3) ["the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury"].)

6

circumstance would be to vacate the sentence and remand the matter for the trial court to resentence under the amended version of section 1170. (E.g., *id.* at pp. 1034–1035.)

The Attorney General, however, argues remand is not necessary in this case because any error (or rather, noncompliance with sections 1170(b)(2) and 1170(b)(6)(B), which was not in effect at the time of sentencing) is harmless. We are not persuaded.

B.    *Section 1170(b)(6)(B)*

It is not disputed defendant qualifies as a "youth" under section 1170(b)(6)(B) given his age at the time of the offenses.  The Attorney General argues the fact that the trial court did not consider defendant's youth at sentencing is harmless because the aggravating circumstances outweigh the mitigating circumstances such that imposition of the lower term would be contrary to the interests of justice.  That may be.  Nor did defendant present evidence or argument about how his age may have been a contributing factor in the offense.  But section 1170(b)(6)(B) did not exist at the time of sentencing, and under this circumstance, it is appropriate to remand to provide an opportunity for the parties to address the issue and the trial court to select a sentence under section 1170 as amended in the first instance. (*Flores*, *supra*, 73 Cal.App.5th at p. 1039.)

Accordingly, we vacate the sentence and remand the matter for a "full resentencing" under the amended version of section 1170.  (*People v. Jones* (2022) 79 Cal.App.5th 37, 46 [when a case is remanded for resentencing under S.B. 567, "a full resentencing is appropriate"]; *People v. Buycks* (2018)

5 Cal.5th 857, 893 [on remand, "the resentencing court has jurisdiction to modify every aspect of the sentence" under the " 'full resentencing rule' "].)[6]

C.     *Section 1170(b)(2)*

None of the aggravating factors relied on by the trial court was either stipulated to by defendant or found true beyond a reasonable doubt after a trial as required by section 1170(b)(2).  The Attorney General asserts this does not matter because "a jury would have found true beyond a reasonable doubt all of the aggravating factors on which the trial court relied," citing *People v. Lopez* (2022) 78 Cal.App.5th 459.  We decline to consider this issue given that we are remanding for resentencing.[7]

## DISPOSITION

The sentence is vacated and the matter is remanded to the trial court to sentence defendant under Penal Code section 1170 as amended.

---

[6] At oral argument, defendant argued for the first time that he may also be entitled to remand under section 1170, subdivision (b)(6)(A), which makes the lower term the presumptive term where the defendant's experience of "psychological, physical, or childhood trauma" "was a contributing factor in the commission of the offense."  We decline to consider this argument, which was not raised in the appellate briefing. (*Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 377, fn. 12.)  Nonetheless, defendant is free to argue the point on remand under the " 'full resentencing rule.' " (*People v. Buycks, supra*, 5 Cal.5th at p. 893.)

[7] Without expressing any opinion regarding the appropriate sentence in this case, we observe that the sentence the trial court originally imposed of 14 years, 8 months could be configured without running afoul of section 1170(b)(2) by using count 1 as the principal term, imposing all middle terms, and declining to strike any of the punishments.

_____
Miller, J.

WE CONCUR:


_____
Stewart, Acting P.J.


_____
Van Aken, J.*


A163555, *People v. Meredith*

_____

\* Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9